**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| In re:<br><br>URBAN CHESTNUT BREWING COMPANY, INC.<br><br>EIN – 27-1324055<br><br>Debtor. | Chapter 11<br><br>Case No. 24-43233-357<br><br>Hearing Date:<br>February 19, 2025 at 10:00 a.m. (CT)<br><br>Related to Docket Nos. 131, 151, 152 |

**RESPONSE TO (i) MIDLAND STATES BANK'S OPPOSITION TO
FIRST INTERIM APPLICATION FOR COMPENSATION OF LEWIS RICE LLC
AS COUNSEL TO OFFICIAL COMMITTEE OF UNSECURED CREDITORS
FOR THE PERIOD SEPTEMBER 23, 2024 THROUGH DECEMBER 31, 2024; and
(ii) UNITED STATES OF AMERICA'S OBJECTION TO OFFICIAL COMMITTEE OF
UNSECURED CREDITORS' FIRST APPLICATION FOR COMPENSATION**

The Official Committee for Unsecured Creditors (hereinafter, the "Committee") hereby submits its response to the Opposition filed by Midland States Bank's ("MSB") [Docket No. 151] (the "MSB Opposition") and the Objection filed by the Small Business Association's ("SBA") [Docket No. 152] (the "SBA Objection"), both in regard to the Committee's *First Interim Application for Compensation of Lewis Rice LLC as Counsel to Official Committee of Unsecured Creditors for the Period September 23, 2024 through December 31, 2024* [Docket No. 131] (the "Fee Application"). For its response to the MSB Opposition and the SBA Objection, the Committee respectfully states as follows:

I.   **The MSB Opposition**

1. The MSB Opposition contains numerous erroneous statements and accusations of non-disclosure which are in direct conflict with the documents of record. Specifically, Section B of the MSB Opposition, entitled, "COMMITTEE COUNSEL FAILED TO ADEQUATELY

DISCLOSE THEIR CONNECTIONS UNDER FEDERAL RULE OF BANKRUPTCY PROCEDURE 2014, AND THE FEES SHOULD BE DISALLOWED" accuses the Committee of the following:

    a. Failing to "adequately disclose their connection to Debtor's estate and the creditor's in this bankruptcy case" [Doc. 151, at 4];

    b. Having a disqualifying conflict of interest because "[t]he Committee members are also equity holders of the Debtor" and Lewis Rice LLC represents Committee member Lester Nydegger "in a state court lawsuit against David Wolfe and Florian Kuplent, two guarantors of the MSB First Lien Loan who are also insiders of Debtor" [Doc. 151, at 5]; and

    c. Failing to disclose that "Committee counsel of record, Meagan Nydegger, an intellectual property lawyer by trade, is the daughter of Committee member, Lester Nydegger." [Doc. 151, at 5].

2. Contrary to these allegations, the Committee fully disclosed each of these items multiple times, both in writing and in open court. In fact, in the September 27, 2024, hearing in this case, during which counsel appeared on behalf of MSB, this Court asked the counsel for the Committee whether there was a connection between the Committee member named Nydegger and the counsel named Nydegger, to which counsel for the Committee responded in the affirmative and explained that connection is a "father-daughter connection." [Doc. 56, at 01:49–02:00]. This Court requested that when the Notice of Hearing in relation to the Committee's Application for Employment [Doc. 48] is served, the Committee file a Supplemental Declaration to disclose such a connection between Committee Member Lester Nydegger and attorney Meagan Nydegger so "that way everyone will know and if anyone has an issue with it, we will be able to deal with it." [Doc. 56, at 02:10–23].

2

3. Subsequently, in its Supplemental Declaration of John J. Hall in Support of Application of Official Committee of Unsecured Creditors for Authority to Retain Lewis Rice LLC as Counsel (the "Supplemental Declaration"), filed October 1, 2024, the Committee expressly disclosed that "The Committee members include: James Byrne, Joe Basralian, Daniele Basralian, and Lester Nydegger. Meagan Nydegger has a familial relationship with Lester Nydegger, as Lester Nydegger is the father of Meagan Nydegger." [Doc. 65, at 2].

4. Thus, MSB's allegation ("Committee counsel failed to disclose [the familial connection between Meagan Nydegger and Lester Nydegger] in their Retention Application. In fact, in the Affidavit accompanying the Retention Application, Lewis Rice represents: '*No attorney at Lewis Rice has any other connection with Debtor, creditors, United States Trustee, or any employee of that office, or any parties in interest in this proceeding.*'" [Doc. 151, at 5]) is inaccurate and directly contradicted by the written record and disclosures in this case. The Committee's disclosure of this very matter was not only made and discussed in open court but was also explicitly disclosed in the Supplemental Declaration.

5. Not only did counsel for the Committee disclose the connection between attorney Meagan Nydegger and Committee member Lester Nydegger, but in the Affidavit of John J. Hall of Lewis Rice LLC (the "Affidavit"), filed on September 25, 2024, [Doc. 49] the Committee's counsel also candidly disclosed Lewis Rice LLC's representation of Lester Nydegger in the state court lawsuit referenced in the MSB Opposition. Specifically, item 11(i) of the Affidavit states as follows:

> Lewis Rice represents Lester Nydegger in connection with enforcement of a guaranty of a promissory note against certain guarantors, who are directors of Urban Chestnut Brewing Company but who are not debtors in this case. The action to enforce the guaranty is specifically against the guarantors in their individual capacity, not in their capacity as directors of Urban Chestnut Brewing Company, and Urban Chestnut Brewing Company is not a party to the action.

[Doc. 49, at 3].

3

6. Importantly, Lewis Rice is not representing Lester Nydegger in his capacity as an equity holder in the state court case, and the fact that Lester Nydegger is also an equity holder has no impact on the pending state court case. As disclosed in the Affidavit, the matter in the state court case is a breach of contract action against David Wolfe and Florian Kuplent in their individual capacity, not in their capacity as directors of Debtor, and Debtor is not a party to that case at all. This representation was not hidden; rather, it was conspicuously disclosed in the Affidavit, and it does not present any disqualifying conflict of interest because Debtor is not a party to the state court action and the state court action does not implicate or impair Lester Nydegger's obligations as a fiduciary to represent all unsecured creditors. If MSB is alleging the state court breach of contract action does impair Lester Nydegger's ability to act as a fiduciary member of the Committee to represent all unsecured creditors (which it does not) or believes Lewis Rice's representation of Lester Nydegger in that matter creates a conflict of interest (which it does not), MSB should have raised that objection when this information was disclosed on September 25, 2024, instead of waiting until the counsel for the Committee spent over 90 hours working on this case. Indeed, MSB could have, and should have, raised any such objection as part of the retention request, rather than sitting back and waiting for a fee application after this Court approved the Committee's retention of counsel upon full disclosure of the items about which MSB now had decided to complain.

7. And if MSB is objecting to the mere fact that the Committee members are also equity holders of the Debtor, this fact has been known since prior to the formation of the Committee and has been discussed in this Court multiple times. Specifically, prior to being appointed to the Committee, each Committee member was required to submit a completed Questionnaire for Official Committee of Unsecured Creditors (the "Questionnaire") to the United States Trustee,

4

Joseph Schlotzhauer.  One of the questions included on the Questionnaire required disclosure of the individual's affiliation as a shareholder, including the number of shares held.  With knowledge of the proposed Committee members' shareholder affiliation, the US Trustee appointed James W. Byrne, Joseph B. Basralian & Daniele V. Basralian, and Lester Nydegger to the Committee on September 20, 2024. [Doc. 40].

8.   In addition, the Committee members' affiliation as shareholders was also known, or should have been known, to all parties by at least September 27, 2024.  Particularly, during discussions at the hearing on September 27, 2024, regarding the Committee's Limited Objection to Debtor's Motion for Authorizing Payment of Pre-Petition Claims of Critical Vendors [Doc. 50], it was stated on the record that the Committee is made up solely of "equity holders/noteholders [and] there is no trade creditor on the Committee." In fact, MSB's counsel even acknowledged the Committee being made up of noteholders and shareholders.  [Doc. 56, at 28:40–29:14] (counsel for Debtor explaining that the Committee consists only of "equity holders/noteholders" and that Debtor does not take issue with the Committee reviewing critical vendor payments but does not think the Committee should have veto power); [Doc. 56, at 34:36–36:06] (MSB counsel voicing concerns about the Committee reviewing critical vendor payments because the determination of what is critical and what is not "is up to the Debtor…not the noteholders, not the shareholders."). Thus, the Committee members' affiliation as equity holders of Debtor was known, discussed in this Court, and even acknowledged by MSB prior to this Court's Order Granting Application of Official Committee of Unsecured Creditors for Authority to retain Lewis Rice LLC as Counsel [Doc. 86], which was entered on October 11, 2024.

9.   Despite MSB having actual knowledge of (i) the Committee members' affiliation as equity holders of the Debtor at least as early as September 27, 2024; (ii) Lewis Rice's representation of

5

Committee member Lester Nydegger in connection with a breach of contract action against David Wolfe and Florian Kuplent at least as early as September 25, 2024; and (iii) the connection between attorney Meagan Nydegger and Committee member Lester Nydegger at least as early as September 27, 2024, MSB filed no objection raising any of these purported issues until February 5, 2025 – after Committee's counsel spent over 90 hours working on this case.  MSB did not object to the Committee's retention of Lewis Rice as counsel for the Committee.

10. In addition, the Committee's Application for Employment [Doc. 48], the accompanying Affidavit [Doc. 49], and the Supplemental Declaration [Doc. 65], and the extensive disclosures included, show that MSB's accusations of non-disclosure that are included in Section B of the MSB Opposition [Doc. 151, at 4–6] have no basis, and, in fact, are directly contradicted.  Now, as a result of MSB's misguided accusations, the Committee's counsel was forced to spend additional time responding to MSB's incorrect claims that the Committee "failed to adequately disclose their connections" to Debtor's estate and the creditors in this case. [Doc. 151, at 4].

11. MSB's objections contained in Sections A and C of the MSB Opposition are also without merit.  MSB objects to "any payment of allowed fees from its Cash Collateral" in Section A of the MSB Opposition based on "[n]either MSB nor the SBA consent[ing] to the payment…from Cash Collateral" and because the Cash Collateral Order and Budget do not contemplate payment of fees of the Committee's counsel. [Doc. 151, at 4].  MSB's apparent position is that only unencumbered estate assets may be used to pay the Committee's professional fees, and since this case does not have any unencumbered assets, the Committee's counsel should not be paid anything for their services, despite the fact that the Committee has provided services that benefit both the Debtor, MSB, as senior lien holder, and the estate, as discussed further below.  *See* [Doc. 151, at 4].

6

12. In Section C of the MSB Opposition, titled: "THE COMMITTEE HAS NOT PROVIDED ANY MATERIAL BENEFIT TO THE BANKRUPTCY ESTATE" MSB contends the following:

    a. "[T]he legal fees incurred by the Committee are disproportionate to the needs of the case and any value that the Committee has or can add." [Doc. 151, at 6];

    b. "[T]he Committee has continued to incur legal fees, knowing there was a minimal chance of recovery to the unsecured creditors" because Debtor's intentions to sell at a sale price of $2.55M had been "evident since the Petition Date" and that this amount is insufficient to satisfy either MSB's First Lien Loan or the SBA's Second Lien Loan. [Doc. 151, at 6].

13. This Court explained that, "the Committee serves an important role [in this case]…having someone, other than [the Court] who [is] not in a great position to determine [what activities and vendor payments are] particularly important for this business, the Committee members are in a much better position" to do so and having [the Committee] act as an intermediary is very helpful to the Court. [Doc. 56, at 40:41– 41:21].

14. Indeed, Unsecured Creditors' Committees have three basic functions: 1) to monitor the Debtor's operations, 2) to investigate potential insider causes of action, and 3) to negotiate on the plan of reorganization. *In re Bailey Ridge Partners, LLC*, 2018 Bankr. LEXIS 1961 (Bankr.N.D.Iowa June 28, 2018). In this case, the Committee has served each of these functions and provided value to Debtor, creditors, this estate, and in turn MSB, by doing so.

15. One example of the Committee's benefit to the estate is that while the Committee was reviewing Debtor's operations, the Committee identified potential improper payments to insiders that the Committee then investigated. The investigation showed that payments totaling over $10,000 per month were being paid as a salary to two individuals, i.e., spouses of the principals of Debtor, who did not perform day-to-day functions for Debtor, as described in further detail in the

7

Committee's Fee Application.  *See* [Doc. 131, at 7].  This resulted in a savings of over $10,000 per month for Debtor and the estate, which also reduced MSB's Cash Collateral used on these payments, after these payments were ceased.

16. The Committee also devoted valuable time to reviewing the proposed Asset Purchase Agreement, which identified a potential inequity to the insiders compared to the unsecured creditors in general.  The Committee discussed this potential inequity with Debtor and the potential purchaser in October 2024, and the provision in question was subsequently removed. A further, more recent example of the benefit provided by the Committee is the review of the subsequent modifications to the Asset Purchase Agreement and identification that some of the unsecured creditors may be benefited at the expense of others.  This issue was discussed with the US Trustee, who agreed with the Committee, and the Committee filed an objection to the Debtor's Motion to Sell [Doc. 70] and Supplemental Notice of Sale [Doc. 137] thereafter.  *See* [Doc. 144].

17. The Committee also notes that it reviewed Debtor's proposed bid procedures and process at the inception of this case.  The Committee consulted with Debtor and its counsel on multiple occasions to understand the proposed process and marketing efforts to ensure that the process was maximizing the exposure and marketing of the assets.  Among other things, these efforts led to Debtor retaining an industry leader in marketing breweries, helping to ensure a full and robust marketing of the assets.

18. As to MSB's allegation that the Committees legal fees "are disproportionate to the needs of the case and any value that the Committee has or can add" [Doc. 151, at 6], the Committee respectfully disagrees.  Contrary to MSB's statement and allegation that the "Committee continues to expend time preparing unnecessary filings and sending multiple lawyers to appear at each hearing. These actions have been an unlawful exercise of billing judgment and, potentially, a

8

misuse of estate resources" [Doc. 151, at 7], the Committee has prepared a minimal number of filings and only done so when necessary to benefit the Debtor. In fact, the Committee has prepared only one filing since October 9, 2024, and that filing was the above-referenced Objection to the Debtor's Motion to Sell [Doc. 70] and Supplemental Notice of Sale [Doc. 137], which was necessary to evaluate whether the sale of Debtor's assets was in compliance with 35 U.S.C. § 1129 and did not unfairly benefit insiders. *See* [Doc. 144, at 4–5].

19. As to MSB's allegation that the Committee is sending multiple attorneys to the hearings and "exercising unlawful billing judgment," as the Committee described in detail in the Fee Application, while the Committee has indeed sent two attorneys to the hearings, it "has only charged fees for the attendance of *one* attorney, the attorney with the lowest billable hour rate." [Doc. 131, at 15–16] (emphasis added). This was done in an effort to "keep the time and labor involved to a minimum." [Doc. 131, at 16].

20. Like the erroneous accusations included in Section B of the MSB Opposition, MSB's accusations regarding costs of "multiple attorneys" is directly contradicted by the Committee's papers in this case. The fact that the Committee is not billing for two attorneys to be present at the hearings was clear from the face of the Application. Likewise, the value added by the Committee, especially the identification of improper payments totaling more than $10,000 per month and subsequent ceasing of such payments, was fully discussed and explained in the Application.

21. The Committee notes again that, due to MSB's apparent misreading of the documents filed by the Committee, the Committee has been forced to prepare the present Response, which has caused an increase in the time that the Committee has spent on this case, and resultingly has caused an increase in the legal fees incurred.

9

22. For the reasons stated above, MSB's objections should be overruled because (i) they contain egregious errors and baseless accusations that the Committee failed to disclose certain information that are in direct conflict with the documentation of record; (ii) the Committee has made every effort to keep its fees as low as reasonably possible; and (iii) the Committee has provided value to this estate that benefited all creditors, including MSB.

      **II.**      **The SBA Objection**

23. The SBA Objection is premised on similar arguments as the MSB Opposition, although the SBA Objection does not contain the same errors and contradictions that are contained in the MSB Opposition and discussed above. *See* [Doc. 152, at 3–5].

24. Specifically, the SBA objects to the Committee's Fee Application [Doc. 131] because (i) the Debtor does not have any unencumbered assets; and (ii) the SBA claims the Committee has not met its burden of showing its fees are reasonable. *See* [Doc. 152, at 3–5]. The Committee respectfully disagrees.

25. As discussed above in addressing the MSB Opposition, the Committee has not only taken every effort to keep its fees at a minimum, but it has also provided value to Debtor's estate, and in turn to Debtor's secured creditors, including the stopping of improper payments of over $10,000 per month and ensuring the sale documentation does not unfairly favor the insiders or only some unsecured creditors at the expense of others.

26. The Committee also notes that the SBA, like MSB, interprets "value to the estate" to mean only finding a buyer who will pay more money for the brewery assets. The Committee suggests that such a myopic view of value ignores that value encompasses much more than mere increased dollars. Value is provided in all bankruptcy cases by parties that serve to ensure that a debtor makes proper disclosures, follows proper procedures, pays appropriate parties, does not waste

10

estate assets, pursues proper valuation and marketing of assets, and numerous other oversight efforts. Although bottom-line dollars provide a simple measure of value, value is more involved and complex than MSB and the SBA suggest. The Committee here has provided value in multiple ways, more than justifying its counsel's request for approval of its fees.

27. For these reasons, and the reasons stated above in Section I, the Committee respectfully requests that the SBA Objection be overruled.

Dated: February 17, 2025

St. Louis, Missouri

/s/ *John J. Hall*
John J. Hall (#41419)
Meagan K. Nydegger (#75697)
LEWIS RICE LLC
600 Washington Avenue, Suite 2500
St. Louis, MO 63101
Tel.: (314) 444-7771
Fax: (314) 612-7635
mnydegger@lewisrice.com
jhall@lewisrice.com

*Counsel for the Official Committee
        of Unsecured Creditors*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this 17th day of February 2025, a copy of the above and foregoing was electrically filed with the United States Bankruptcy Court, Eastern District of Missouri, pursuant to the Case Management/Electronic Case Filing system of the Court, and electronic notice of such filing was served by the Office of the Clerk upon parties in interest registered in such Case Management/Electronic Case Filing system with respect to this case.

                                                                              /s/ *John J. Hall*
                                                                               John J. Hall