IN THE UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| In re:<br><br>URBAN CHESTNUT BREWING COMPANY, INC.*,*<br><br>          Debtor. | Chapter 11<br><br>Case No. 24-43233-357<br>Hon. Brian C. Walsh<br><br>Hearing Date:<br>March 19, 2025, at 10:00 a.m. (CT)<br><br>Re: Doc 173 |

**OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS
TO SECOND AMENDED MOTION OF DEBTOR FOR ORDER (I) AUTHORIZING
SECURED POSTPETITION FINANCING, (II) GRANTING LIENS, SECURITY
INTERESTS AND SUPERPRIORITY STATUS, (III) AUTHORIZING USE OF CASH
COLLATERAL, AND (IV) GRANTING ADEQUATE PROTECTION**

  The Official Committee of Unsecured Creditors (the "Committee") appointed in the above-captioned Chapter 11 case of Urban Chestnut Brewing Company (the "Debtor") hereby files this objection (the "Objection") to the *Second Amended Motion for Order (I) Authorizing Secured Postpetition Financing, (II) Granting Liens, Security Interests and Superpriority Status, (III) Authorizing Use of Cash Collateral, and (IV) Granting Adequate Protection* [Dkt. No. 173] (the "Second DIP Motion").[1] In support, the Committee respectfully states as follows:

**BACKGROUND**

  1.  The Committee was duly appointed by the United States Trustee on September 20, 2024, and immediately began performing the basic functions of such a Committee, including monitoring Debtor's operations, investigating potential insider causes of action, and negotiating

---

[1] Capitalized terms used herein but not otherwise defined have the meanings ascribed to them in the Second DIP Motion.

on the plan of reorganization. *See In re Bailey Ridge Partners, LLC*, 2018 Bankr. LEXIS 1961 (Bankr.N.D.Iowa June 28, 2018). During performance of these duties, the Committee has provided value to the bankruptcy estate, including identification of potential improper payments to insiders in the amount of over $10,000 per month and causing the same to cease, reviewing and providing feedback on the proposed Asset Purchase Agreement, reviewing critical vendor payments, and ensuring a full and robust marketing of the Debtor's assets. Despite this value added to the bankruptcy estate, this Second DIP Motion includes no payment or arrangement of payment for the Committee's professional services.

2.     Rather, the Second DIP Motion seeks additional financing that will include payment of various professional and administrative expenses – other than the Committee's professionals and expenses. The proposed additional DIP financing must, at a minimum, provide reasonable assurance of administrative solvency to creditors and professionals that have supported Debtor's business and operations during the life of this case.

3.     The DIP financing must ensure that the value conferred by the Committee to the estate in terms of preserving and maintaining this estate – as well as enhancing the value of the estate and the bank's collateral – appropriately reflects the obligations of the Committee, i.e., a budget that will pay the freight of this case, including Committee fees and expenses.

4.     All other professional and administrative fees and expenses appear to be provided for in the budget – besides the Committee's fees and expenses. Moreover, it seeks to layer in yet another professional expense without paying fees of the Committee.

5.     The Committee notes that Debtor's initial request for approval of post-petition DIP financing, in both Debtor's October 6, 2024 Motion for Order Authorizing DIP Financing [Doc. 69], as well as Debtor's October 30, 2024 Amended Motion for Order Authorizing DIP Financing

[Doc. 100], included an explicit Carve-Out for payment of, among other things, professional services of the Committee. As set forth in the Committee's prior objection on financing [Doc. 81], which is hereby incorporated by reference in its entirety, the Carve-Out included is unreasonably small, should be increased, and the Final DIP Order should include language that neither the Carve-Out nor any other budget will act as a cap or limitation in any respects on the amount of Committee fees or expenses that may be incurred or allowed in this case. Notwithstanding Committee's objections to the proposed DIP not including adequate provisions and allocations for payment of Committee's professional services, this Carve-Out was subsequently removed from the Interim Order Authorizing DIP Financing [Doc. 105].

6.  Debtor's initial request for DIP Financing was approved for the amount of $366,000 in Interim Orders on November 19, 2024 [Doc. 105], December 11, 2024 [Doc. 111], and January 23, 2025 [Doc. 143]. Debtor now seeks an increase in DIP funding to a total amount of $606,000.00, which is proposed to be allocated for various operating expenses, professional fees and US Trustee fees, marketing expenses, and deferred maintenance and capital expenditures. Notably, as mentioned above, the professional fees allocated in Debtors Second DIP Motion do not include the Committee's professional fees.

## **OBJECTION**

7.  Under Bankruptcy Code Section 364, a court may not approve debtor-in-possession financing unless the debtor first establishes that it is otherwise unable to reasonably obtain credit on better terms and the credit is necessary for the debtor's continued operation. *See* 11 U.S.C. § 364(d)(1); *In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 37 (Bankr. S.D.N.Y. 1990); *In re Aqua Assocs.*, 123 B.R. 192, 196 (Bankr. E.D. Pa. 1991). Once these two elements are established, a

3

court must then consider whether the terms of the proposed financing are fair, reasonable and adequate. *In re Los Angeles Dodgers LLC*, 457 B.R. 308, 312 (Bankr. D. Del. 2011).

8.　　　The debtor bears the burden of proving that (i) the proposed postpetition financing is an exercise of the debtor's business judgment; (ii) the financing is in the best interests of both the estate and its creditors; (iii) the transaction is both (a) necessary to preserve estate assets and (b) necessary and essential for the continued operation of the debtor's business; (iv) the terms of the proposed transaction are fair and reasonable given the circumstances; and (v) the proposed facility was negotiated in good faith and at arm's length. *In re Farmland Indus., Inc.*, 294 B.R. 855, 881 (Bankr. W.D. Mo. 2003), appeal dismissed, No. 03-00472 (W.D. Mo. Jan. 9, 2004); *In re Mid-State Raceways, Inc., 323 B.R. 40, 60 (Bankr. N.D.N.Y. 2005).*

9.　　　The proposed Second DIP Motion, by excluding any payment for Committee's professional services while providing for payment of other professionals and expenses, and adding in another professional provider, unjustly prejudices the rights that the Bankruptcy Code confers for the benefit of all creditors, namely the unsecured creditors who are represented by the Committee, by granting the lender excessive control over the Debtor as to unduly prejudice the rights of other parties in interest. *In re Defender Drug Stores, Inc.,* 145 B.R. 312, 317 (B.A.P. 9th Cir. 1992) ("courts look to whether the proposed terms would prejudice the powers and rights that the code confers for the benefit of all creditors and leverage the Chapter 11 process by granting the lender excessive control over the debtor or its assets as to unduly prejudice the rights of other parties in interest.").

10.　　　Specifically, the Second DIP Motion's exclusion of Committee professional fees while allowing for payment of other professional fees unjustly prejudices the rights of the unsecured creditors represented by the Committee by inappropriately constraining the ability of

4

the Committee to investigate and, if appropriate, challenge liens and claims of the prepetition lenders, including the SBA's claim to the German Brewery and any potential avoidance actions under Chapter 5.

11. Moreso, by allowing payment of other professional services, specifically the services of Sandberg Phoenix to facilitate closing of the sale but excluding payment of Committee's professional services that have been approved by this Court as an administrative expense of the estate, the Second DIP Motion is apparently purposed on unfairly benefiting postpetition lenders at the expense of other creditors. *See In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 38 (Bankr. S.D.N.Y. 1990). A court will not approve proposed financing "where it is apparent that the purpose of the financing is to benefit a creditor rather than the estate." *Id.* (citing *In re Crouse Grp., Inc.*, 71 B.R. 544, 549 (Bankr. E.D. Pa. 1987).

12. As a result of the foregoing, the Second DIP Motion should not be approved unless the allocation of professional fees is modified to include payment of Committee's professional services in this case.

## RESERVATION OF RIGHTS

13. Accordingly, the Committee reserves all rights to amend or supplement this Objection, to raise additional objections and to introduce evidence at any hearing relating to this Objection and the Second DIP Motion, and without in any way limiting any other rights of the Committee to further object to the Second DIP Motion, on any grounds, as may be appropriate.

## CONCLUSION

WHEREFORE, the Committee requests that the Court (i) sustain this Objection, (ii) deny the relief requested in the DIP Motion, and (iii) grant the Committee such other or further relief as it deems appropriate

5

Dated: March 17, 2025
St. Louis, Missouri

*/s/ John J. Hall*
John J. Hall, #41419
Meagan K. Nydegger #75697
LEWIS RICE LLC
600 Washington Avenue, Suite 2500
St. Louis, MO 63101
Tel.: (314) 444-7600
Fax: (314) 612-7635
jhall@lewisrice.com

*Proposed Counsel for the Official Committee of Unsecured Creditors*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this 17th day of March 2025, a copy of the above and foregoing was electrically filed with the United States Bankruptcy Court, Eastern District of Missouri, pursuant to the Case Management/Electronic Case Filing system of the Court, and electronic notice of such filing was served by the Office of the Clerk upon parties in interest registered in such Case Management/Electronic Case Filing system with respect to this case.

/s/ John J. Hall